UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                       )
IN RE:                                 )
                                       )
SAVVAS V. GIANASMIDIS,                 )          CIVIL ACTION
                                       )          NO. 17-11440-WGY
                    Debtor.            )
_____)


YOUNG, D.J.                                       August 3, 2018

**MEMORANDUM AND ORDER**


I.    **INTRODUCTION**

        This appeal from the Bankruptcy Court deals with whether

the Appellants Stephen J. Kuzma ("Kuzma"), The Law Offices of

Russo & Minchoff ("Russo & Minchoff"), and India L. Minchoff

("Minchoff" and collectively, the "Lawyer Creditors"), are able

to obtain interest on the legal fees they were awarded in

binding arbitration, and, if so, what the appropriate interest

rate ought be from the Debtor and Appellee, Savvas V.

Gianasmidis ("Gianasmidis").  Although interest generally stops

accruing when a debtor files for bankruptcy, 11 U.S.C. § 506(b)

provides for an exception.  Section 506(b) grants over-secured

creditors a right to earn interest in the period between the

filing of the bankruptcy petition and confirmation of the

bankruptcy plan ("pendency interest").  It is not contested that

the Appellants were over-secured creditors since they had various liens attached to real property, the value of which exceeded their claims.

Due to the protracted procedural history described below, the Appellants also argue on appeal that the Bankruptcy Court erred in not granting them interest on their claims prior to the filing of the bankruptcy petition ("prepetition interest").

II. **FACTS**[1]

A. **Procedural History and Relevant Facts**

In 2009, Gianasmidis, an attorney by profession, entered into an agreement (the "2009 Fee Agreement") with Minchoff and her firm Russo & Minchoff to represent him in a suit to recover real property from his daughter (the "Palangas Case"). Bankruptcy Dock. R. ("R.") No. 360-1 at 19-22, ECF No. 2. In 2011, Kuzma joined Minchoff and they entered into a new contingency fee agreement with Gianasmidis (the "2011 Fee Agreement"). Id. at 49-52. Both the 2009 and 2011 Fee Agreements required that in the case of a dispute over the legal fees, the parties would submit to binding and final arbitration before the Legal Fee Arbitration Board (the "LFAB") of the Massachusetts Bar Association. Id. at 21-22, 52. The Palangas

---

[1] The Bankruptcy Court observed that there were no contested material facts in dispute that would prevent it from ruling on the Lawyer Creditors' motion. Bankruptcy R., No. 6, Tr. July 12, 2017 ("Hr'g & Order") 38, ECF No. 5-6.

Case was tried in the Suffolk Superior Court and resulted in a jury verdict in favor of Gianasmidis, which was later affirmed on appeal.  Id. at 54, 56; Appellants' Br. 2-3, ECF No. 14.

Gianasmidis eventually secured the assets, including several real properties (the "Properties"), from his win in the Palangas Case.  R. No. 360-1 at 56-81.  Pursuant to the 2011 Fee Agreement, the Lawyer Creditors sought forty percent of the jury award as compensation for their legal services.  Id. at 2; 49-50.  After some delay and disagreement over the legal fees that Gianasmidis owed the Lawyer Creditors, the Lawyer Creditors filed notice of an attorney's lien pursuant to Mass. Gen. L. ch. 221 § 50, which was subsequently attached to the Properties and recorded.  R. No. 14-1 at 21-30.

After several unsuccessful attempts to force Gianasmidis to arbitrate, the Lawyer Creditors filed suit for breach of contract in the Suffolk Superior Court.  R. No. 360-1 at 2-7. On June 27, 2014, the Superior Court granted, pursuant to Massachusetts Rule of Civil Procedure 4.1, an $800,000 prejudgment attachment on the Properties, which was recorded in the Suffolk County Register of Deeds.  Id. at 9.  Gianasmidis did not answer the complaint and several months later, on March 11, 2015, the Superior Court entered a default judgment against Gianasmidis.  R. No. 360-2 at 30.  Two months later, Gianasmidis moved to remove the default and also filed a motion to compel

arbitration.  Id. at 8-26.  The Superior Court denied the
motions after a hearing and entered a monetary judgment for the
Lawyer Creditors on May 27, 2015.  R. No. 360-3 at 20.  The
Superior Court awarded the Lawyer Creditors $1,527,931.30, which
included interest running from the "date of breach" on December
15, 2012.[2]  Id. at 17-18.  Gianasmidis appealed the Superior
Court's denial of his motions to set aside the default judgment
and compel arbitration.  Id. at 34.

Shortly before filing the appeal, however, Gianasmidis
filed a Chapter 13 voluntary petition for bankruptcy under 11
U.S.C. §§ 101 et seq;[3]  R. No. 1.  The Lawyer Creditors filed
proofs of claim totaling $1,528,935.97 on August 12, 2015, to
which Gianasmidis objected.  R. No. 230.  The Bankruptcy Court
granted the Lawyer Creditors a stay to allow them to defend
against the appeal pending in the state court.  R. No. 47.  The
Massachusetts Appeals Court vacated the default judgment,
concluding that despite a lengthy delay on the part of
Gianasmidis, the Fee Agreement evinced a clear intent to
arbitrate.  R. No. 402-1 at 4.  Accordingly, it reversed and
remanded the Superior Court's denial of the motion to compel
arbitration.  Id.  The Bankruptcy Court disagreed with the

_____

[2] The Superior Court did not, however, specify in its order
what percent interest it used.
[3] The petition was later converted into a Chapter 11
bankruptcy proceeding.  R. No. 64.

Lawyer Creditors that it needed to wait for the Superior Court

to do anything on remand and ordered the parties to arbitrate.

R. No. 435; R. No. 438.

The arbitration proceeded before the LFAB and on January

20, 2017, the arbitration panel issued an award for the Lawyer

Creditors. R. No. 452 at 2-3. After discounting the initial

fee Gianasmidis had paid, the LFAB awarded the Lawyer Creditors

$646,755.00 in "fees, costs and disbursements." Id. at 2. The

award does not contain any statement or reasoning setting forth

how the LFAB calculated the award; it acknowledges the Lawyer

Creditors' request for $1,257,158.65 but also does not explain

how the Lawyer Creditors arrived at this number.[4] Id.

---

[4] The award does contain a list of factors considered by the
arbitrators when making their decision. R. No. 452 at 3. These
factors are drawn from the "guides in determining the
reasonableness of a fee" as set forth in Rule 1.5 of the
Massachusetts Rules of Professional Conduct, Supreme Judicial
Court Rule 3:07. Id. "Each factor is marked to indicate the
relative amount, if any, by which it influenced (either way) the
decision." Id. The arbitrators noted that the following
factors were "principal factors" that influenced their decision:
(1) "The time and labor required, the novelty and difficulty of
the questions involved, and the skill requisite to perform the
legal service properly"; (2) "The amount involved and the
results obtained"; (3) "Whether the fee is fixed or contingent";
and (4) "Whether there was an agreement concerning the fee."
Id. Other relevant factors the arbitrators considered were: (1)
"The fee customarily charged in the locality for similar legal
services"; (2) "The time limitations imposed by the client or by
the circumstances"; (3) "The nature and length of the
professional relationship with the client"; and (4) "The
experience, reputation, and ability of the lawyer or lawyers
performing the services." Id. The arbitrators did not consider
"[t]he likelihood, if apparent to the client, that the

[5]

The Lawyer Creditors subsequently filed a motion in the
Bankruptcy Court to allow interest on the LFAB's award. R. No.
480. The Lawyer Creditors acknowledged that the arbitration was
not appealed as it was "final, binding and represents a final
adjudication," but characterized the arbitration as only
determining the "principal amount" of the legal fees owed. Id.
at 5. Accordingly, the Lawyer Creditors requested that, per
Massachusetts law, the Bankruptcy Court add to the award a 12%
per annum interest beginning from the date it filed suit for
breach of contract on June 27, 2014. Id. at 14. A hearing on
the motion was held on July 12, 2017, at which the Bankruptcy
Court made an oral ruling that it later issued as an order
granting in part and denying in part the Lawyer Creditors'
request to include interest. R. Nos. 509, 516.

## B.    Proceedings at the Bankruptcy Court

Although the Fee Agreements do not prescribe an interest
rate, the Lawyer Creditors argued before the Bankruptcy Court
that as contracts they are covered by Massachusetts General Laws
Chapter 231, section 6C, which provides in relevant part that:

> In all actions based on contractual obligations, upon
> a verdict, finding or order for judgment for pecuniary
> damages, interest shall be added by the clerk of the
> court to the amount of damages, at the contract rate,

---

acceptance of the particular employment will preclude other
employment by the lawyer" because it was not applicable to the
case. Id.

if established, or at the rate of twelve per cent per annum from the date of the breach or demand.

See, e.g., R. No. 480 at 9; see also Mass. Gen. Laws ch. 231, § 6C. Thus, the Lawyer Creditors claimed, they were entitled to a 12% annual increase on the contingency fee from the date[5] the Fee Agreements were breached until Gianasmidis filed a bankruptcy petition (the prepetition interest). R. No. 480 at 9-14. Additionally, the Lawyer Creditors asserted they are entitled to post-petition interest, or pendency interest, because their claim was over-secured -- a point the Bankruptcy Court noted was not in dispute because the value of the properties attached (either under the judicial lien or the attorney's lien) greatly exceeded the Lawyer Creditors' claim. Bankruptcy Ct. Tr. July 12, 2017 ("Bankr. Hr'g & Order") 38, ECF No. 5-6.

The Lawyer Creditors' pendency interest claim is based on 11 U.S.C. § 506(b), which provides that:

> To the extent that an allowed secured claim is secured by property the value of which, . . . is greater than the amount of such claim, **there shall be allowed** to

---

[5] It is unclear on what date the Lawyer Creditors believe the Fee Agreements were breached. Nowhere in their briefs do they provide such a date. At the Bankruptcy Court hearing, counsel for the Lawyer Creditors stated "we believe that the date that demand was made, December 7, 2013, should be at a minimum the date upon which interest should be applied." Bankruptcy Hr'g & Order at 9. But December 7, 2013 was when Gianasmidis secured the properties after settlement of the Palangas Case; the Lawyer Creditors did not demand arbitration until June 13, 2014. Appellants' Br. 10. Nor did the Bankruptcy Court provide an exact date of breach. See Bankruptcy Hr'g & Order at 38-42.

the holder of such claim, interest on such claim, and
any reasonable fees, costs, or charges provided for
under the agreement or State statute under which such
claim arose.

(emphasis added).  Arguing that the relevant "State statute" was

again Massachusetts' Chapter 231, Section 6(c), the Lawyer

Creditors contended the pendency interest rate should also have

been 12% per annum from the date Gianasmidis filed the

bankruptcy petition (May 28, 2015) until any reorganization plan

was confirmed.  R. No. 480 at 11.

Gianasmidis opposed the motion primarily on the basis that

the LFAB had not included interest in its award and that the

Bankruptcy Court was not permitted to "look behind" the

arbitration award.  Bankr. Hr'g & Order 31.

The Bankruptcy Court rejected Gianasmidis's argument that

the LFAB's failure to include interest in its arbitration award

precluded the Bankruptcy Court from assessing interest.  Id. at

40.  It gave two reasons why it was not precluded from assigning

interest: (1) the LFAB's rules "make clear that the arbitrator

only decides the amount of the fee"[6] and (2) Section 506(b) is

---

[6] The Introduction to the Rules of the Legal Fee Arbitration
Board of the Massachusetts Bar Association states:
> The Board provides a resource for both attorneys and
> clients by answering questions about legal fees disputes,
> publishing model fee agreements, and presenting educational
> programs that promote healthy communications between
> attorneys and clients about their professional association.
> . . .

the relevant "statutory credit predicate," and it authorizes the

Bankruptcy Court to assign interest if permitted under state law

or per the terms of the agreement. Id.

The Bankruptcy Court further concluded that the Chapter

231, Section 6(c) of the Massachusetts General Laws did not

apply because it requires a "verdict" or "judgment" and the

Massachusetts Appeals Court had vacated the Superior Court's

judgment without any "conditions or restrictions on the

vacator." Id. at 40-41. The Bankruptcy Court thus rejected the

---

        [T]he arbitrators cannot make any rulings beyond the
    fairness of the legal fee.
    . . .
        At the hearing a single arbitrator decides all matters
    involving total fees charged of $10,000 or less, and a
    three member panel will decide all matters involving total
    fees charged of more than $10,000.
Rules of the Legal Fee Arbitration Board of the Massachusetts
Bar Association (2012), https://www.massbar.org/docs/default-
source/fee-arbitration-board/fab-petitions-and-
rules/fabrules.pdf?sfvrsn=4

    The rules also state that:
        The Board does not have jurisdiction to render awards
    in disputes where the dispute has been finally adjudicated
    before a court, or where the services were rendered by an
    attorney who is not authorized to practice law in the
    Commonwealth. The Board shall not award damages or
    increase or reduce the fee to compensate for other claims
    of any party, but evidence shall be heard regarding a claim
    of the attorney's handling of a case or a client's actions
    to determine whether the fee charged for the ultimate
    services rendered was fair.
Id.

The rules do not mention anything about interest or calculating
interest.

12% interest rate since there "is no judgment in this case to which a clerk of court could add interest." Id. at 41. Nor was it convinced by the Lawyer Creditors' arguments that Gianasmidis should be "estopped from opposing interest" due to his delay and refusal to arbitrate for a period of time. Id. at 41-42. Section 506(b), the Bankruptcy Court explained, does not empower it to assign interest based on equitable considerations or the common law; it allows for addition of interest based on "a state statute or contract." Id. at 40-41.

The Bankruptcy Court ruled, however, that because the claim was over-secured, the Lawyer Creditors were entitled, under section 506(b), to "the federal judgment rate of interest," beginning from the date of the arbitration award. Id. at 42.

It is from this order that the Lawyer Creditors appealed to this Court on July 27, 2017 pursuant to 28 U.S.C. § 158(a)(1). Notice of Appeal, ECF No. 1. The Lawyer Creditors raise three issues with the Bankruptcy Court's ruling:

> 1) Whether the Bankruptcy Court erred by failing to provide prepetition interest on the Lawyer Creditors' Claims, commencing as of the date of [Gianasmidis's] breach of contract.

> 2) Whether the Bankruptcy Court erred in its calculation of the duration of post-petition interest on the Lawyer Creditors' over-secured nonconsensual claim.

> 3) Whether the Bankruptcy Court erred in determining that the Lawyer Creditors were not

entitled to post-petition interest at the
Massachusetts statutory rate.

Appellants' Br. 1.  Both parties have fully briefed the issues.

See Appellants' Br.; Appellee's Br., ECF No. 19; Appellants'

Reply Br. ("Appellants' Reply Br."), ECF No. 20.  These issues

are examined in turn below.

### III. ANALYSIS

#### A.    Standard of Review for Bankruptcy Appeals

Bankruptcy appeals under 28 U.S.C. § 158 are reviewed under

traditional appellate standards of review.  The district court

reviews the underlying findings of fact for clear error.

Monarch Life Ins. Co. v. Ropes & Gray, 65 F.3d 973, 978 (1st

Cir. 1995).  It applies de novo review to conclusions of law and

the abuse of discretion standard to matters left to the

Bankruptcy Court's discretion.  Id.; see In re Cumberland Farms,

Inc., 284 F.3d 216, 225 (1st Cir. 2002).  The Court will review

"the Bankruptcy Court's resolution of mixed questions of law and

fact 'for clear error unless its analysis was "infected by legal

error."'"  In re Catton, 542 B.R. 33, 36 (D. Mass. 2015)

(Sorokin, J.) (quoting In re SW Boston Hotel Venture, LLC, 748

F.3d 393, 402 (1st Cir. 2014)).

#### B.    Whether the Bankruptcy Court Erred in Not Assigning
####       Prepetition Interest

Whether the Lawyer Creditors had a right to prepetition

interest is matter of law and the Bankruptcy Court's denial of

interest is reviewed de novo.  In re Garcia, 955 F.2d 16, 17
(5th Cir. 1992).

In determining the availability or amount of prepetition
interest, bankruptcy courts apply nonbankruptcy law by looking
to the language of the agreement or relevant state law.  Loft v.
Lapidus, 936 F.2d 633, 639 (1st Cir. 1991) ("State law governs
the prejudgment interest rate."); In re Chang, 274 B.R. 295, 302
(Bankr. D. Mass. 2002).

If a contract is silent on the applicable interest rate,
Massachusetts law provides that "upon a verdict, finding or
order for judgment for pecuniary damages, interest shall be
added by the clerk of the court . . . at the rate of twelve per
cent per annum from the date of the breach or demand."  Mass.
Gen. Laws Ann. ch. 231, § 6C.  The purpose of prejudgment
interest is to compensate a party "for the loss of use or the
unlawful detention of money."  McEvoy Travel Bureau, Inc. v.
Norton Co., 408 Mass. 704, 717 (1990) (quoting Conway v. Electro
Switch Corp., 402 Mass. 385, 390 (1988)).  It is not intended
"to penalize the wrongdoer, or to make the damaged party more
than whole."  Id. (internal citation omitted).  The addition of
interest under section 6C is a "ministerial act" that "attaches
automatically" and therefore "for interest to be awarded, a
judge need not mention it."  O'Malley v. O'Malley, 419 Mass.
377, 381 (1995).  The Massachusetts Supreme Judicial Court has

ruled, however, when an arbitration award is silent on preaward interest courts are to presume "[claims for interest have] been submitted to arbitration." Reilly v. Metro. Prop. & Liab. Ins. Co., 412 Mass. 1006, 1007 (1992) (quoting Sansone v. Metropolitan Prop. & Liab. Ins. Co., 30 Mass. App. Ct. 660, 662-63 (1991)). Otherwise allowing parties to come in and challenge arbitration awards would "vitiate[]" the purpose of arbitration. Id.

Neither the 2009 nor the 2011 Fee Agreement provides that interest will be paid in case of a dispute over fees, much less provide an interest rate. R. No. 360-2 at 19-22; 49-52. As the Bankruptcy Court observed, the text of section 6C is unambiguous; its application is premised on a "verdict" or "order for judgment" resulting in pecuniary damages. The Lawyer Creditors cite to no authority establishing that section 6C may apply in the absence of a judgment or after a judgment has been vacated, and they do not offer their own explanation as to why it ought apply. Appellants' Br. 12-13; Appellants' Reply Br. 5-7. Nor do they attempt to claim any other basis for their entitlement to prepetition interest, common law or otherwise. Appellants' Br. 12-13. Consequently, because the Lawyer Creditors cannot provide a legal basis for prepetition interest, there is no need to "look behind" or examine the basis for the arbitration award. See Appellee's Br. 11-13. The Lawyer

Creditors argue that the Bankruptcy Court did not articulate grounds for denying prepetition interest. Appellants' Reply Br. 5. This is patently false; the Bankruptcy Court's denial of prepetition interest as set forth above was premised on the fact that the Massachusetts Appeals Court vacated the Superior Court's judgment and that there was therefore no judgment upon which to apply the statutory 12% interest rate. See Bankr. Hr'g & Order 40-41; Reilly, 412 Mass. at 1007.

Truly fatal to the Lawyer Creditors' claim, however, is the holding of the Massachusetts Supreme Judicial Court in Reilly, not cited by either party here, but which appears to control as it directly references section 6C. The Reilly court endorsed a previous Appeals Court holding that when an arbitration award is silent on interest, preaward interest ought not be granted in order to discourage litigants from requiring courts to examine the arbitration award and thereby undermine the purpose of arbitration. 412 Mass. at 1007. In other words, not only does section 6C not provide prepetition interest to the Lawyer Creditors because of the vacated judgment, but Massachusetts law also prohibits them from seeking preaward interest in state courts.

For these reasons, the denial of prepetition interest is AFFIRMED.

**C. Whether the Bankruptcy Court Erred in Its Calculation of the Period for Which Pendency Interest Was Available**

The second issue the Lawyer Creditors appeal is the Bankruptcy Court's calculation of the period during which pendency interest accrued. Gianasmidis argues that this calculation was within the Bankruptcy Court's discretion and is therefore subject to the abuse of discretion review. Appellee's Br. 15-16. The Lawyer Creditors allege the Bankruptcy Court committed "clear error" in its calculation. Appellants' Br. 12-14. As discussed below, the plain reading of section 506(b), when read in context with section 502, requires that pendency "shall be allowed" as of the date of the filing of the petition. The issue therefore is matter of law and the Court reviews this ruling de novo.

The Bankruptcy Court ruled the Lawyer Creditors are entitled to "interest upon the Arbitration Award at the interest rate provided under 28 U.S.C. § 1961, from the date of the Arbitration Award through the Effective Date of the Third Amended Plan of [] Reorganization of Savvas V. Gianasmidis." R. No. 516 at 2. Neither this order nor its oral ruling provides any explanation as to why the Bankruptcy Court chose the date of the arbitration award as the date from which the pendency interest would accrue. See Bankr. Hr'g & Order 42 (ruling orally that the Lawyer Creditors were entitled to "the federal

judgment rate of interest after the date of the [arbitration] award for the same reason . . . the state judgment statute does not apply").  Temporarily setting aside the appropriate **rate** (discussed below in subsection D), the Lawyer Creditors argue that because they were over-secured creditors during the entirety of this protracted litigation, they are entitled under section 506(b) to pendency interest accruing from the **petition date** (May 28, 2015), as opposed to the date of the arbitration award (January 20, 2017.  Appellants' Br. 10, 12-14.

The general rule is that interest stops accruing "as of the date of the filing of the petition."  11 U.S.C. § 502(b).  There is, however, an exception when a creditor has an over-secured claim, in which case 11 U.S.C. § 506(b) provides that "there shall be allowed to the holder of such claim, interest on such claim . . . provided for under the agreement or State statute under which such claim arose."  Because this right to pendency interest arises under federal statute, it is governed by federal law.  Vanston Bondholders Protective Comm. v. Green, 329 U.S. 156, 163 (1946) ("When and under what circumstances federal courts will allow interest on claims against debtors' estates being administered by them has long been decided by federal law.").

The Court must read the words of a statute "in their context and with a view to their place in the overall statutory

scheme." Food & Drug Admin. v. Brown & Williamson Tobacco

Corp., 529 U.S. 120, 133 (2000) (quoting Davis v. Michigan Dep't

of Treasury, 489 U.S. 803, 809 (1989)).  Often the "meaning --

or ambiguity -- of certain words or phrases may only become

evident when placed in context."  Id. at 132.  It is true that

section 506(b) does not state when the pendency interest begins

to accrue; its only condition is that the creditor be over-

secured.  As noted above, however, section 506(b) modifies the

baseline rule established in section 502 and cannot be read in

isolation.  The text of section 502(b)(2) reads in relevant

part, "[e]xcept as provided in subsection[] (e)(2) . . . the

court, after notice and a hearing, shall determine the amount of

such claim  . . . **as of the date of the filing of the petition**,

and shall allow such claim in such amount, except to the extent

that . . . such claim is for unmatured interest" (emphasis

added).  The exception noted in section 502(b)(2), sub-section

(e)(2), further defines how the court ought treat the claim:

> A claim for reimbursement or contribution of [an
> entity that is liable with the debtor on or has
> secured the claim of a creditor] that becomes fixed
> after the commencement of the case shall be
> determined, and shall be allowed under
> [§ 502(b)(2)] . . . the same as if such claim had
> become fixed before the date of the filing of the
> petition.

In other words, although Gianasmidis objected to the Lawyer

Creditors' claim of proof and the claim was therefore not

"determined" at the time of the petition, the claim, once determined, is not to be treated any differently than it would be were it determined at the time the petition was filed. To treat section 506(b) motions for pendency interest as accruing from the time the claim is determined would violate the spirit of section 502(e)(2) by disadvantaging claims that were not determined at the time the bankruptcy petition was filed. Thus, the plain meaning of section 506(b) mandates that an over-secured creditor's claim shall be allowed interest from the date of the petition (provided of course that the creditor is over-secured at the time of the petition).

This intuitively makes sense since the amount to which an over-secured creditor is entitled often is not settled until the plan confirmation proceeding. An alternative reading would inappropriately incentivize debtors to oppose determination of over-secured creditors' claims solely in order to delay accrual of pendency interest.

The United States Supreme Court and numerous other courts have likewise held that for creditors who are over-secured at the time of the petition, interest pursuant to section 506(b) begins as of the date of the petition filing. Rake v. Wade, 508 U.S. 464, 471 (1993) superseded by statute on other grounds ("Under § 506(b) the holder of an oversecured claim is allowed interest on his claim to the extent of the value of the

collateral. . . . [S]uch interest accrues as part of the allowed claim **from the petition date** until the confirmation or effective date of the plan." (emphasis added)); <u>In re SW Hotel Venture, LLC</u>, 460 B.R. 4, 24 (Bankr. D. Mass. 2011) ("Section 506(b) applies only from the petition date through the date of confirmation of any plan."), <u>vacated on other grounds</u>, 748 F.3d 393 (1st Cir. 2014); <u>In re Bernbaum</u>, 404 B.R. 39, 42 (Bankr. D. Mass. 2009) ("[Pendency interest] runs from the petition date to either confirmation or the effective date of the plan . . . ."); <u>In re Beltway One Dev. Grp., LLC</u>, 547 B.R. 819, 821 n.1 (B.A.P. 9th Cir. 2016) ("The postpetition, pre-effective date interest rate determined under § 506(b) commences on the petition date and continues until the effective date stated in the confirmed plan . . . .").

Gianasmidis misconstrues or takes out of context several scattered statements from the Bankruptcy Court's ruling in an attempt to provide an explanation for why it chose the date of the arbitration award. Appellee's Br. 15. There is simply no support in the ruling, to which Gianasmidis cites, for the notion that the Bankruptcy Court applied some totality of the circumstances test somehow to arrive at the date it did. Moreover, the cases upon which Gianasmidis relies, <u>see</u> <u>id.</u>, do not support the proposition that the date from which pendency

interest accrues is left to a Bankruptcy Court's equitable discretion.

Most of the litigation around section 506(b) has centered on whether and when a debtor becomes "over-secured" as defined in the bankruptcy code.  The First Circuit recently confronted this issue in In re SW Boston Hotel Venture, LLC, where it identified disagreement amongst its sister circuits.  748 F.3d at 405.  There, SW Hotel filed a voluntary Chapter 11 proceeding wherein Prudential was a senior secured creditor.  SW Hotel ended up selling one of its hotels, the proceeds of which were to go to Prudential.  Id. at 399.  Both parties agreed that Prudential became an over-secured creditor at some point during the bankruptcy petition, but the valuation method and timing of the valuation were disputed.  Id. at 404.  It is in this context that the First Circuit approved the "flexible approach" on which Gianasmidis relies.  Id. at 407-08.  This "flexible approach" consequently grants bankruptcy courts considerable discretion in applying different valuation techniques or methods to determine a creditor's over-secured status, which may in turn alter the date from which a creditor is entitled to pendency interest under section 506(b).  But none of this is relevant to the present case.  The Bankruptcy Court ruled and neither party now contests, that "[i]t is undisputed that the [L]awyer [C]reditors have a secure claim in this case either as a judicial lien

creditor or by virtue of a statutory lien, a so-called attorney's lien . . . ."  Bankr. Hr'g & Order 38; see also id. at 39 ("[T]here's no dispute that the [L]awyer [C]reditors are secured creditors under Section 506(a) . . . .").

In sum, the "flexible approach" to determine when pendency interest should accrue is not implicated because the Lawyer Creditors were undisputedly over-secured at all times before and after the petition date.  The Bankruptcy Court's ruling that the pendency interest began accruing after the arbitration award -- nearly twenty months later -- is therefore inconsistent with section 506(b).

Having established that the Lawyer Creditors have a right under section 506(b) to pendency interest prior to the arbitration award, the Court is presented with the question whether this right conflicts with state policy, which is not to grant preaward interest.  Massachusetts law, as announced by its highest court, prohibits courts from entertaining claims for preaward interest when the arbitration award does not provide for it.  Reilly, 412 Mass. at 1006-07 (affirming the Appeals Court's refusal to grant preaward interest on the basis that it would undermine the very purpose of arbitration); Maimaron v. Commonwealth, 449 Mass. 167, 181 n.12 (2007) ("[Litigant] is not entitled to preaward interest because the issue of such interest was not submitted to arbitration."); Bolman v. Plymouth Rock

Assur. Corp., 82 Mass. App. Ct. 135, 139 (2012) ("Generally, in a proceeding to confirm an arbitration award, a judge may not alter an arbitrator's decision that allows, denies, or fails to mention preaward interest."). Because the LFAB did not award the Lawyer Creditors any preaward interest, Massachusetts law precludes state courts from granting them preaward interest.

The Supreme Court has carefully construed section 506(b) to separate out what it has called the "unqualified" right to pendency interest from the recovery of "reasonable fees, costs, or charges," which, unlike the pendency interest, are subject to state statutes. United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989). This case does not require this Court to resolve the hard question of whether this right to pendency interest is subject to contrary state law. Here, the Lawyer Creditors' statutory right to pendency interest may undermine the goals of Massachusetts law, but there is no direct conflict. Federal law simply recognizes a right in bankruptcy proceedings that Massachusetts courts have chosen to deny.[7]

For the reasons set forth the Court REVERSES the Bankruptcy Court's ruling to the extent it ordered pendency interest to run

---

[7] The federal judgment rate discussed in subsection D, infra, may be appropriate during this preaward pendency interest since the Lawyer Creditors do not have any state law claim to preaward interest.

from the date of the arbitration award. Pendency interest runs
from the petition date.

### D. Whether the Bankruptcy Court Erred in Not Using the Massachusetts Statutory Rate to Calculate the Pendency Interest

The First Circuit has affirmed that the "appropriate rate
of pendency interest is . . . within the limited discretion of
the court." In re SW Boston Hotel, 748 F.3d at 413 (alteration
in original) (quoting In re Milham, 141 F.3d 420, 423 (2d Cir.
1998)). Accordingly, the Bankruptcy Court's order setting the
pendency interest rate at the federal judgment rate is reviewed
for abuse of discretion.

Turning to whether the Bankruptcy Court abused its
discretion in applying the federal post-judgment interest rate
codified in 28 U.S.C. § 1961, it is worth noting that this is a
fairly unsettled area of law and section 506(b) does not provide
much guidance on calculating the appropriate interest rate. The
First Circuit attempted to bring some clarity to the issue,
embracing what appears to be the majority position in In re SW
Boston Hotel. It noted that although section 506(b) "does not
specify how to compute post-petition interest," the Supreme
Court's interpretation of the provision in Ron Pair Enterprises
"does not dictate that bankruptcy courts look to the applicable
contract provisions, if any, when computing postpetition
interest." 748 F.3d at 413. It went on to observe, however,

that there is widespread agreement that "where the parties have
contractually agreed to interest terms, those terms should
presumptively apply so long as they are enforceable under state
law and equitable considerations do not dictate otherwise."  Id.
It stated that such an approach "is consistent with the general
premise that 'creditors' entitlements in bankruptcy arise in the
first instance from the underlying substantive law creating the
debtor's obligation.'"  Id. (quoting General Elec. Capital Corp.
v. Future Media Prods. Inc., 536 F.3d 969, 973 (9th Cir. 2008)).
The First Circuit cited favorably to the Seventh Circuit's
conclusion that bankruptcy "is a procedure for enforcing pre-
bankruptcy entitlements under specified terms and conditions
rather than a flight of redistributive fancy."  Id. (quoting In
re Lapiana, 909 F.2d 221, 223 (7th Cir. 1990)).

Under Massachusetts law, the 12% interest rate set forth in
Massachusetts General Laws chapter 231, section 6C (discussed
above) automatically attaches to arbitration awards -- **even when
the award is silent on the issue**.  The Massachusetts Supreme
Judicial Court affirmed this rule in Reilly, where it stated:
"To encourage 'swift obedience' to the [arbitration] award
without the necessity of court proceedings, the rule in
Massachusetts is that post-award interest runs from the date of
the award."  412 Mass. at 1007 (quoting Sansone, 30 Mass. App.
Ct. at 663) (speaking in the context of section 6C); see

_Connecticut Valley Sanitary Waste Disposal, Inc._ v. _Zielinski_,
436 Mass. 263, 271 n.10 (2002) (same); _see also_ _Meaney_ v.
_OneBeacon Ins. Co._, No. 07-1294-BLS2, 2010 WL 1253600, at *3
(Mass. Super. Ct. Mar. 3, 2010) (Neel, J.) (interpreting _Reilly_
to require a 12% rate to post-award interest in the absence of a
controlling statute).

The Massachusetts Supreme Judicial Court was presented
with a similar situation in _Murphy_ v. _National Union Fire Ins._
_Co._, 438 Mass. 529 (2003). Murphy was injured in a car accident
and agreed to binding arbitration with the insurance company to
settle his claim. _Id._ at 530. He was awarded $1,610,000 but
the arbitration award "did not mention interest." _Id._ Three
days later, he filed a complaint in Massachusetts Superior Court
to have his award confirmed "plus accrued interest." _Id._
Twenty-five days after the award was issued, the insurance
company sent him a check. _Id._ The Superior Court confirmed the
award and awarded post-award interest that had accrued over the
twenty-five days. _Id._ The Supreme Judicial Court held that
Murphy was "not entitled to 'judgment' on the amount of the
arbitration award" since the award had already been paid. _Id._
at 531. It nevertheless upheld the Superior Court's post-award
interest and rejected the insurance company's argument that
Murphy was not entitled to post-award interest because it had
paid him within thirty days. _Id._ at 533-34.

Thus, in the absence of any bankruptcy proceeding, it appears the Lawyer Creditors would have been entitled under Massachusetts law to post-award interest accruing from the date of the award. In other words, even though the Lawyer Creditors did not have their award confirmed by the Superior Court, the underlying substantive law under which the Fee Agreements were entered would have entitled them to a 12% interest rate beginning on January 20, 2017.

The Bankruptcy Court, however, stated: "The allowed amount of a secured claim is not based on equity. It's not based on fairness. It's based on value of security and the **allowance of interest under a state statute or contract**. It does not depend on the common law because **Section 506(b) specifically refers to interest and charges under state statute for the contract**." Bankr. Hr'g & Order 41-42 (emphasis added).

As matter of statutory construction, it appears the Bankruptcy Court incorrectly construed section 506(b) to make the right to pendency interest dependent on the contract or state statute. The Supreme Court explicitly rejected this construction in Ron Pair, where it held:

> [Section 506(b)] entitles the holder of an oversecured claim to postpetition interest and, in addition, gives one having a secured claim created pursuant to an agreement the right to reasonable fees, costs, and charges provided for in that agreement. . . . This reading is also mandated by the grammatical structure

of the statute.  The phrase "interest on such claim"
is set aside by commas, and separated from the
reference to fees, costs, and charges by the
conjunctive words "and any."  As a result, the phrase
"interest on such claim" stands independent of the
language that follows.  "[I]nterest on such claim" is
not part of the list made up of "fees, costs,
or charges," nor is it joined to the following clause
so that the final "provided for under the agreement"
modifies it as well.  The language and punctuation
Congress used cannot be read in any other way.  By the
plain language of the statute, the two types of
recovery are distinct.

489 U.S. at 241–42 (citation and footnote omitted).

As set forth above, the Lawyer Creditors' claim under

section 506(b) is presumptively determined by the applicable

nonbankruptcy law under which the agreement was made, but it is

still subject to the Bankruptcy Court's "limited discretion."

There are a few statements in the Bankruptcy Court's oral

ruling that may be interpreted as justification for granting the

Lawyer Creditors a lower pendency, post-award interest rate than

their statutory entitlement under Massachusetts law.  The

Bankruptcy Court rejected the Lawyer Creditors' estoppel

argument in part because of its observation that "the lawyer

creditors sued because despite the arbitration clause and

opposed arbitration in this court as well and the debtor's

breach of contract simply gives rise to a claim."  Bankr. Hr'g &

Order 41.  But using this observation as justification for

invoking the Bankruptcy Court's equitable power to apply an

interest rate different from that provided for in the applicable
nonbankruptcy law seems implausible at best.

Still, whether the Bankruptcy Court abused its limited
discretion in applying the federal judgment rate to post-award
interest rather than the 12% under Massachusetts law is a close
call, made more difficult due to the lack of a formal order
explicitly explaining its reasoning.

When sitting in an appellate capacity, this Court is
especially reluctant to chide another court for not "writing up"
some finding or ruling.  The reason is simple.  I am a trial
judge.  "This is a trial court.  Trial judges ought go out on
the bench every day and try cases."  Hon. John H. Meagher,
Senior Justice, Massachusetts Superior Court (1978).[8]  This is --
and has been -- the central organizing principle of my own
judicial practice for over forty years.  We are busy.  Some
things must be written up.  See, e.g., Fed. R. Civ. P. 52(a)(1).[9]
We are encouraged to write up other things.  See, e.g., Fed. R.
Civ. P. 56(a).  But see United States v. Massachusetts, 781 F.
Supp. 2d 1, 19-20 (D. Mass. 2011).  No trial judge can "write

_____

    [8] This is actually a variant, adapted to the judicial role,
of Lord Nelson's famous tactical instruction that "[n]o captain
can do very wrong if he places his ship alongside that of the
enemy."  C.S. Forester, Lord Nelson 324 (1929).
    [9] "The findings and conclusions may [also] be stated on the
record after the close of the evidence. . . ."  Fed. R. Civ. P.
52(a)(1).

up" everything; "[w]e must . . . decide.  Failure to act is oft-

times as injurious to justice as judicial error."  William G.

Young, The Judge's Common Book,

http://www.mad.uscourts.gov/boston/pdf/WGY/THE%20JUDGE'S%20COMMO

N%20BOOK.pdf.  We pick and choose what to write up based on what

we think is important and what may be necessary for review down

the road.  This is especially true of our exceptionally busy

bankruptcy courts.  None of us is 100% prescient.

Therefore, on this record, this Court cannot conclude that

the Bankruptcy Court abused its "limited discretion" in awarding

the lower federal interest rate rather than the 12%

Massachusetts statutory rate.  Even so, since the Bankruptcy

Court needs to recalculate the pendency interest over the

correct period, the better part of valor is to vacate the

determination of the interest rate to allow the Bankruptcy Court

further to consider the matter of the appropriate pendency

interest rate in light of the foregoing.

**IV.  CONCLUSION**

For the foregoing reasons, the Court AFFIRMS the Bankruptcy

Court's ruling that the Lawyer Creditors are not entitled to

prepetition interest, REVERSES the Bankruptcy Court's ruling

that pendency interest began accruing as of the date of the

arbitration award, and VACATES the Bankruptcy Court's

determination that the federal judgment rate applies to post-

award, pendency interest.  Further proceedings shall take place in accordance with this opinion.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE